CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 08, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **DEVINCHE JAVON ALBRITTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 7:24-CV-00283** |
| | ) | |
| **v.** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **COMMONWEALTH OF VIRGINIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION

Plaintiff Devinche Javon AlBritton, a Virginia inmate proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983 alleging that the Commonwealth of Virginia and fifteen individual defendants violated his constitutional rights by unlawfully retaliating against him and depriving him of due process and equal protection. Dkt. 1. AlBritton exhausted his administrative remedies. The Commonwealth of Virginia and twelve of the individual defendants[1] moved to dismiss under Rule 12(b)(6) for failure to state a claim. Dkts. 22–23, 42. This matter is now fully briefed. For the reasons set forth below the Court will grant in part and deny in part Defendants' motion to dismiss.

## I. Facts

The Complaint[2] alleges retaliation, civil conspiracy, and violations of his due process and equal protection rights. First, AlBritton claims that Defendants, acting as in concert, retaliated

[1] The two Jane Doe Defendants could not be identified for service. Defendant Kayla Mallory was served on September 16, 2024, but failed to respond to the Complaint. Accordingly, this opinion does not address the claims against those three Defendants.

[2] "[C]ourts routinely look beyond what pro se litigants identify as their 'complaint' and analyze the substance of any included documents in considering a motion to dismiss for failure to state a claim." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024); *see also Goines v. Valley Cmty.*

against him for filing prison grievances and federal lawsuits and for discharging his criminal fines under Va. Code § 19.2-354(c)(i) in violation of his First, Eighth, and Fourteenth Amendment rights. Dkt. 1 at 5. Second, AlBritton alleges that Defendants retaliated against him for "exercising his Constitutional right of access to the Courts and for actively satisfy [sic] his Outstanding Criminal Court Fines under § 19.2-354 of the Va. Code" by "fil[ing] false and defamatory disciplinary charges, using the Commonwealth of Virginia's Official Notary Public Seal Against him, threatening his life and safety, and stole [sic] and seiz[ing] [his] Legal Court paperwork" to prevent him from taking further legal action in violation of his First, Eighth, and Fourteenth Amendment rights. *Id*. Although not listed as a separate cause of action, the Complaint also alleges that several individual Defendants denied AlBritton equal protection and due process. *See* Dkts. 26, 26-1. The Complaint named the Commonwealth of Virginia and fifteen individual defendants, all of whom were employed at River North Correctional Center during the relevant events. *Id*. at 3–4. The individual defendants are RNCC Counselor Kayla Mallory, Virginia Department of Corrections Chief of Operations David Robinson, Warden David Anderson, Assistant Warden Bateman, Intel Officer K. Lowe, Unit Manager Dowell, Law Librarian Hash, Hearing Officers King and West, intel officer Lt. Hickman, Lt. J.S. Jones, Lt. Blot, Fiscal Tech K. Upchurch,[3] and two Jane Doe defendants. *Id*.

---

*Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that courts may consider documents explicitly incorporated by reference or otherwise integral to the complaint). Pursuant to the liberal construction afforded to pro se plaintiffs, I construe the Complaint to include factual allegations detailed in AlBritton's original complaint (Dkt. 1), response to the motion to dismiss (Dkts. 26, 26-1), and exhibits attached to AlBritton's motion to supplement the complaint (Dkt. 47-1). Also, as previously ordered, AlBritton's original complaint is amended and his request claim for monetary damages is reduced from 14 million to 1.4 million. *See* Dkts. 38, 40.

[3] Defendant Upchurch was originally listed as a Jane Doe Defendant but has since been identified. Dkt. 28.

In 2022, AlBritton brought a civil rights action against several RNCC officials for violations of his constitutional rights. *See AlBritton v. Landry*, No. 7:22CV00306, 2024 WL 1858548 (W.D. Va. Apr. 26, 2024). In that case, he claimed that RNCC employees violated his rights under the First, Eighth, and Fourteenth Amendments, and under the Americans with Disabilities Act and the Rehabilitation Act by denying his request to enroll in online law school classes, and retaliated against him for filing prison grievances, complaints, and court actions. Throughout 2023, AlBritton frequently went to the prison law library to prosecute his case. Ultimately, this Court dismissed most of his claims, except a retaliation claim against Defendant Landry. AlBritton went to trial, and the jury returned a verdict for Landry. AlBritton moved to set aside the verdict, which this Court denied. The Fourth Circuit affirmed the decision.

This case centers around AlBritton's attempts to use his prison wages to pay outstanding state fines and Defendants' responses to those attempts. Dkt. 1 at 6. AlBritton's referenced state court cases are *Commonwealth v. AlBritton*, Nos. CR01-3930, CR02-724, CR10-3743, and CR03-1788. Dkt. 1 at 6; Dkt. 1-1 at 4–8. At RNCC, AlBritton was employed as a shower man. Dkt. 1 at 6. Under Va. Code § 19.2-354(C), completion of community service before or after incarceration, or during incarceration for certain programs, may be used to discharge fines and costs imposed as punishment for a criminal offense. AlBritton's employment as a shower man did not qualify to offset his fines or costs under this provision. *See* Op. Atty. Gen., Opinion No. 22-007 (March 16, 2022), 2022 WL 850742; *Vanmeter v. Commonwealth*, 897 S.E.2d 722, 726 (Va. Ct. App. 2024). To receive discharge of state fines, the Virginia state courts required that the pay statements submitted be original documents and "must be on the correctional facility's official letterhead or official pay statement invoices" and that all submissions must be original documents. Dkt. 1-1 at 3.

Although AlBritton was not eligible for these discharges within the terms of the statute, he used the provision to discharge a portion of his state court fine with approval from the Virginia state courts. On December 1, 2022, AlBritton submitted a request to the Clerk of the Virginia Beach Circuit court to discharge $11,436.11 of his outstanding fines based on 1,639 hours worked for the VDOC on or after July 1, 2020. Dkt. 1-1 at 5. The Circuit Judge approved the request. *Id*.

Seeking to discharge additional outstanding fines, AlBritton solicited RNCC signatures on several inmate work attendance sheets to certify additional hours worked during his incarceration at various VDOC prisons. *See* Dkt. 1-1 at 7 (signed and notarized summary sheet certifying that AlBritton worked 324 hours in July to August 2018 and April to May 2019); *id.* at 11–13 (signed and notarized summary and inmate work attendance sheet certifying that AlBritton worked 150 hours during July to September 2009); *id.* at 18 (signed and notarized summary sheet certifying that AlBritton worked 240 hours from April to June 2023). AlBritton intended to submit the notarized documents to the Virginia Beach Circuit Court to discharge payment of fines under Va. Code § 19.2-354(C). Dkt. 1 at 6; *see also* Dkt. 1-1 at 17 (request to discharge fines dated June 14, 2023).

On April 24, 2023, AlBritton met with Mallory and asked her to notarize and copy additional legal paperwork. Dkt. 1 at 8. During that meeting, Mallory informed him that certain RNCC administrators, including Defendants David Robinson, David Anderson, Jason Bateman, Dowell, and K. Lowe had questioned her about AlBritton's legal activities. *Id*. Mallory told him that he was "about to be in some shit" and that he "need[ed] to stop what ever [sic] it is that's bringing heat." *Id*. AlBritton responded that he was not doing anything illegal. *Id*. at 9.

On June 14, 2023, AlBritton met with RNCC officials, again seeking certification of his work hours to submit for discharge of fines. Dkt. 1-1 at 18. At that meeting, Mallory informed AlBritton that "higher ups" told her not to sign or notarize his work hour certifications to be filed with the courts. Dkt. 1 at 9. Mallory warned AlBritton that if he continued to present his work certifications to the state court he would be prosecuted for fraud. *Id*. AlBritton assured her that his actions were legally valid and supported by a Circuit Court Judge and filed the certification with the Virginia Beach Circuit Court. *Id*.

On July 19, 2023, AlBritton asked Defendant K. Upchurch, a business office supervisor, to print his VDOC work hour pay statement to correspond with his LVCC account summary for filing in Virginia Beach Circuit Court. *Id*. at 10. Upchurch, believing the request constituted fraud, asked Lowe to charge AlBritton with an offense 123.[4] *Id*. at 4. The following day, Defendant Dowell summoned AlBritton to his office under the pretext of providing the requested paperwork. *Id*. When AlBritton arrived at the office, he was "thrown to the ground, cuffed, and shackled." *Id*. RNCC officers placed AlBritton in an RHU isolation cell with "absolutely nothing, no Bible, hygiene, or a bed to sleep on." *Id*. On July 21, 2023, while in isolation, RNCC officers served AlBritton with the offense 123 disciplinary charge, which alleged that he forged and altered LVCC paystubs. AlBritton went on hunger strike until his release from RHU on July 28, 2023. *Id*.

After his release from RHU on July 28, 2023, AlBritton was moved from his previous cell in B-Building to D-Building under the control of Unit Manager Colna. *Id*. at 11. Colna was a defendant in AlBritton's then-pending civil rights lawsuit. *Id*. at 11. RNCC staff barred

---

[4] An offense 123 charges the prisoner with "commission of fraud or bribery by any means of communication." Dkt. 1-1 at 20.

AlBritton from receiving further notary services without explicit permission from Defendant Anderson. *Id*.

AlBritton continued to prosecute his civil rights action in this court, frequently requesting time in the law library. *Id*. Another inmate, Thomas, told AlBritton that Defendants Mallory, Dowell, and Lowe were telling inmates that because of AlBritton notary and copy services were to be heavily restricted moving forward. *Id*. at 12. Thomas also told AlBritton that Defendants Lowe, Hash, and Mallory were seeking criminal fraud charges against him. *Id*.

On August 7, 2023, Defendant Stanley-King presided over AlBritton's disciplinary hearing for the offense 123 disciplinary charge. *Id*. at 12. AlBritton produced "the original ink signed and notarized paperwork," specifically, his LVCC Account Summary, which was signed by Mallory and notarized by Justin Wooten. *Id*. AlBritton argued that Mallory was lying and had signed the LVCC Account Summary knowing he planned to file it with the Virginia Beach Circuit Court. *Id*. Lowe testified that Mallory told her that she never signed the paperwork. *Id*. at 13. Stanley-King found AlBritton guilty of the offense 123 disciplinary charge and removed him from the hearing. *Id*.

On August 11, 2023, AlBritton went to the law library for a scheduled session, intending to do research to challenge the 123 disciplinary charge. *Id*. at 13. On his way there, he ran into Defendant Anderson and showed him the original LVCC Account Summary signed by Mallory. *Id*. Anderson laughed and said that if "[AlBritton] wasn't trying to sue every damn body things like this wouldn't be happening to you. You can appeal, but I doubt you'll win, I'm certain of that." *Id*. at 13–14.

AlBritton was upset but continued to the law library. *Id*. at 14. AlBritton wrote motions to amend his pending civil rights claim to include retaliation and additional defendants because of

the offense 123 disciplinary charge and conviction. After AlBritton had finished, Defendant Hash came into the library to collect prisoners' documents and make copies. AlBritton gave Hash the civil motions and his LVCC Resident Account Summary, which was signed by Mallory and notarized by Justin Wooten. *Id*. Hash went to the copy room and was soon joined by Mallory. *Id*. When Hash returned, she had removed the "motions and arguments made against RNCC staff and the LVCC resident account summary, page *8," which AlBritton intended to submit for discharge of his fines. *Id*. at 15. Hash kicked AlBritton out of the law library. *Id*. Later that day, Defendant Lowe served AlBritton with a second offense 123 disciplinary charge for copying the allegedly fraudulent paperwork for service upon the courts. *Id*. AlBritton, fearful of continued retaliation, decided not to return to the law library or ask RNCC staff for copy or notary services. *Id*. On August 17, 2023, AlBritton filed a grievance. He also encountered Defendant Bateman, who told AlBritton that he would be sent to Red Onion "to teach [him] a lesson about filing lawsuits." *Id*. at 16.

On September 12, 2023, Hearing Officer West conducted the disciplinary hearing on AlBritton's second 123 disciplinary charge. *Id*. at 15–16. West concluded that AlBritton forged the document and found him guilty. *Id*.

AlBritton exhausted his grievance procedure as to the "false, and defamatory 123 charges." *Id*. at 16. He also tried to bring criminal charges against the individual defendants by contacting Magistrate Judge Jill Long. *Id*. At the probable cause hearing on AlBritton's criminal complaint, Judge Long referred the case to an investigator, who failed to follow up with AlBritton. *Id*. at 17; Dkt. 1-1 at 22–25. AlBritton was transferred from RNCC to Sussex I State prison. Dkt. 1 at 17.

AlBritton also appealed his convictions for both offense 123 disciplinary charges. On December 11, 2023, the Western Regional Administrator upheld the conviction for the first offense 123 charge. *Id*. On February 29, 2024, AlBritton received notice that the conviction for the second 123 charge was reversed for improper stacking of charges. *Id*. at 18. Because of these disciplinary charges, AlBritton became eligible for transfer to a higher security prison, including Red Onion or Wallens Ridge. *Id*. He refused to sign his annual review detailing that fact, as he alleged that the disciplinary charges were false and retaliatory. *Id*. Believing that the disciplinary charges were the result of retaliation by RNCC staff, AlBritton filed this lawsuit. For relief, he requests $1,400,000 in compensatory and punitive damages.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quoting *Twombly*, 550 U.S. at 557).

Pro se complaints are afforded a liberal construction and are to be held to a lower standard than pleadings drafted by lawyers. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir.

2006); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction is particularly important when pro se complaints allege civil rights violations. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). "Principles requiring generous construction of pro se complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A pro se plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021).

## III. Analysis

### A. State Sovereign Immunity

The Eleventh Amendment grants each state immunity from suit in federal court by citizens of another state. Const. Amend. XI. The Supreme Court has expanded the scope of immunity in holding that sovereign immunity bars suit in federal court by a citizen against their own state. *Hans v. Louisiana*, 134 U.S. 1 (1890). States and state agencies are thus immune from suits for damages, unless immunity is waived by the state or abrogated by Congress. *Biggs v. North Carolina Dept. of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (quoting *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019)).

Congress did not abrogate state sovereign immunity by enacting § 1983. Although officials are subject to suit for damages in their personal capacity, "[n]either a state nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Defendants argue that the Commonwealth of Virginia must be dismissed because, as a state, it is not subject to suit in an action for damages under § 1983. Dkt. 23 at 12. I agree.

Because the Commonwealth of Virginia is not a person under § 1983, AlBritton's claims against the Commonwealth of Virginia are dismissed.[5]

B. Retaliation Claims

AlBritton claims that Defendants retaliated against him for exercising his constitutional rights. A retaliation claim has three elements: (1) the plaintiff engaged in an activity protected under the First Amendment; (2) "the defendant took some action that adversely affected his First Amendment rights"; and (3) plaintiff's protected activity and defendants' conduct are causally related. *Gowen v. Winfield*, 130 F.4th 162, 173 (4th Cir. 2025) (citing *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (*Martin II*); *see also Jones v. Solomon*, 90 F.4th 198, 213–14 (4th Cir. 2024).

In this case, the first element of retaliation is fulfilled because AlBritton engaged in protected First Amendment activity. Courts have long held that "[t]he First Amendment protects the right 'to petition the Government for a redress of grievances.'" *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (*Martin I*) (internal citations omitted); *see also Booker*, 855 F.3d at 544 ("This Court has long held that prison officials may not retaliate against prisoners for exercising their right to access the courts.").[6] AlBritton was litigating a civil rights claim against RNCC officials during the relevant timeframe. AlBritton's adjudication of his § 1983 claim in *AlBritton v. Landry*, is a protected activity. At the same time, AlBritton's attempts to earn credits for his

---

[5] AlBritton's claims for injunctive relief are moot since he is no longer housed at RNCC. *See Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1991)("Because the prisoner has been transferred, his request for injunctive relief is moot."); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (collecting cases) (holding that transfer rendered claim for injunctive relief moot).

[6] Although filing grievances is also a protected activity, AlBritton did not file a grievance until after the allegedly retaliatory actions occurred. Therefore, AlBritton cannot show that prison officials retaliated against him for filing a grievance. *See* Dkt. 1 at 16 (noting that AlBritton filed a grievance against "staff and officials" for the "defamatory 123 charges"); Dkt. 26-1 at 19 (grievance form dated August 17, 2023).

work in prison under Va. Code § 19.2-354(C) do not qualify as a protected activity. Although there is no case law on point, seeking discharge of criminal fines and costs is distinct from petitioning the Government for redress of grievances. Therefore, the first element of AlBritton's retaliation claim is fulfilled but his actions related to discharge of his state fines and costs do not qualify as protected activity.

AlBritton must also plausibly allege adverse action. Retaliation is actionable even if the act taken is ordinarily permissible. *Am. Civ. Liberties Union of Maryland, Inc. v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). A defendant engages in adverse action if "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Jones*, 90 F.4th at 214. Although not dispositive, whether the plaintiff has been deterred from exercising his First Amendment rights may be considered in determining adverse action. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). AlBritton alleges five retaliatory actions: (1) placement in RHU, (2) offense 123 charging, (3) conduct in the offense 123 adjudication, (4) interference with ongoing litigation, and (5) other miscellaneous threats and communications. Still, I do not assess each adverse action separately because AlBritton fails to plausibly allege causation.

Causation requires a link between the protected activity and the adverse action. To show causation, a plaintiff bears a prima facie burden "to show that his protected activity was 'a substantial or motivating factor' in the defendants' action." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (quoting *Martin II*, 977 F.3d at 299). The prima facie burden is met if (1) the defendants were aware of the plaintiff's protected activity and (2) the adverse action and protected activity are temporally connected. *Id*. (quoting *Constantine*, 411 F.3d at 501); *Gowen*, 130 F.4th at 174 (holding that defendants' knowledge and temporal proximity is sufficient to

show causation on a motion to dismiss). Absent a temporal connection, a plaintiff may establish causation by showing recurring retaliatory animus in the intervening period between the protected activity and the adverse action. *Johnson v. Baltimore City*, 163 F.4th 808, 819 (4th Cir. 2026).

Although AlBritton alleges that some Defendants were aware of his civil rights lawsuit, each adverse action occurred between July and September 2023. *See* Dkt. 1 at 10–18. AlBritton engaged in a protected activity by initiating his previous civil rights lawsuit on June 15, 2022, more than a year before the alleged retaliation. Complaint, *AlBritton v. Anderson, et al.*, Case No. 7:22-cv-00306 (W.D Va. June 15, 2022), Dkt. 1. The defendants in that case became aware of the pendency of AlBritton's suit upon waiver of service on December 21, 2022. *See* Waiver of Service, *Albritton v. Landry,* 7:22-cv-00306 (W.D. Va. Dec. 21, 2022), Dkt. 20. Temporal proximity must be very close to establish causation. *Hodges v. Meletis*, 109 F.4th 252, 262 (4th Cir. 2024); *see also Penley v. McDowelll Cnty. Bd. of Education*, 876 F.3d 646, 656 (4th Cir. 2017) ("[K]nowledge eight to nine months prior is not 'very close.'" (citations omitted)); *Pascaul v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (holding that the temporal connection could not establish causation when there was a gap of three to four months between the protected activity and the adverse action). Therefore, AlBritton cannot establish causation via temporal connection. Nor does AlBritton allege a pattern of retaliatory animus in that intervening period. As AlBritton fails to establish causation, his retaliation claims must be dismissed.

C. <u>Due Process Claims</u>

AlBritton alleges that Defendants Stanley-King, Lowe, and Bateman denied him due process in the August 7, 2023, disciplinary hearing. An inmate must demonstrate that he was

deprived of a life, liberty, or property interest by government action to succeed on a claim of a violation of substantive or procedural due process under the Fourteenth Amendment. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). The liberty interest of an inmate is limited to avoiding a deprivation that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472. 484 (1995). For the purposes of this motion, Defendants do not dispute that AlBritton alleges a protected liberty interest. Dkt. 27 at 8 n.2. Therefore, to succeed on a procedural due process claim, AlBritton must show only that "the procedures attendant upon that deprivation were constitutionally deficient." *Barefoot v. City of Wilmington*, 306 F.3d 113, 124 (4th Cir. 2002) (citations omitted).

In disciplinary proceedings, inmates do not enjoy the same due process rights as a criminal defendant; rather, those rights are limited to reflect the inmate's incarcerated status. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A disciplinary proceeding satisfies procedural due process if an inmate is provided with (1) advance notice of the disciplinary charges; (2) "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary actions taken;" (3) the ability to call witnesses and present documentary evidence as long as this action "will not be unduly hazardous to institutional safety or correctional goals"; (4) the opportunity to have representation if the inmate is illiterate or the proceedings are especially complex; and (5) an impartial decision-maker. *Id*. at 563–71; *accord Brown v. Braxton*, 373 F.3d 501, 504 (4th Cir. 2004).

In this case, several elements of due process were fulfilled. AlBritton received notice of the disciplinary hearing in advance. *See* Dkt. 1-1 at 20. Defendant Stanley-King provided a written statement explaining that he relied on Defendant Lowe's testimony that Defendant

Mallory told her she did not sign the form. Dkt. 26-1 at 17. And, this is not a case in which AlBritton is illiterate, nor is it unduly complicated.

However, AlBritton plausibly alleges that Stanley-King denied him due process. AlBritton requested that Mallory appear as a witness at the hearing. Dkt. 26-1 at 16. Stanley-King denied the request, indicating that Mallory's testimony was not relevant. *Id*. Defendants also argue that Mallory's testimony was not relevant. Dkt. 27 at 9. "[P]rison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify" in either the administrative record or by presenting testimony in court when the deprivation of liberty is challenged. *Ponte v. Real*, 471 U.S. 491, 497 (1985). This qualified right aims to strike "a careful balance between inmates' due process interests and the legitimate goals of security concerns of a penal institution." *Lennear v. Wilson*, 937 F.3d 257, 268 (4th Cir. 2019) (quoting *Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016)). Under *Wolff*, an inmate has a right to call witnesses unless allowing him to do so is "unduly hazardous to safety or correctional goals." 418 U.S. at 566. Irrelevance of a witness's testimony is a valid reason to decline to allow the inmate to call a witness. *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976). But, even affording Stanley-King's decision substantial deference, it strains credulity to find that the testimony of a staff member whose signature AlBritton is accused of forging is not relevant. In his memorandum to Warden Anderson addressing AlBritton's appeal of his second conviction, Regional Administrator Thomas Meyer notes that "Counselor Mallory never provided testimony at this [August 7, 2023] disciplinary hearing yet denies signing the form, which constitutes a due process violation." Dkt. 1-1 at 26. Therefore, AlBritton plausibly states that Stanley-King's refusal to allow him to call Mallory as a witness constituted a due process violation. Defendants' motion to dismiss the due process claim against Stanley-King is denied.

AlBritton fails to plausibly allege that Lowe and Bateman violated his due process rights at the August 7, 2023, hearing. Bateman was not present for the hearing. Lowe provided testimony, but had no role in providing the procedural protections guaranteed by *Wolff*. Therefore, AlBritton fails to allege that either Lowe or Bateman was personally involved in the violation of his due process rights.

D. Equal Protection Claims

AlBritton also alleges that Defendants denied him equal protection through their conduct at the August 7, 2023, hearing. "Although the Equal Protection Clause protects prisoners from discriminatory treatment by prison officials, prisoners are not a suspect class." *Waters v. Bass*, 304 F. Supp. 2d 802, 810 (E.D. Va. 2004). Therefore, prison regulations that classify or otherwise control prisoners are valid if they are reasonable. *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 557 (E.D. Va. 2006). To state an equal protection claim, a plaintiff must show (1) differential treatment compared to others that are similarly situated and (2) that the differential treatment was the result of intentional or purposeful discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Although AlBritton has plausibly stated a claim for denial of due process, he neither alleges that he was treated differently than any other prisoners in the disciplinary process, nor claims that his treatment was the result of intentional or purposeful discrimination. Therefore, Defendant's motion to dismiss AlBritton's equal protection claim is granted.

E. Civil Conspiracy Claims

Finally, AlBritton alleges that Defendants conspired to retaliate against him for exercising his right to file prison grievances, federal lawsuits, and satisfy his outstanding criminal fines in

accordance with Virginia law. Dkt. 1 at 5. Defendants argue that AlBritton's allegations fail to state a claim for civil conspiracy.

To establish a civil conspiracy, the plaintiff must show that (1) the defendants acted jointly in concert, (2) performed an overt act in furtherance of the conspiracy, and (3) the overt act resulted in deprivation of the plaintiff's constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Conclusory allegations of conspiracy are insufficient. *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). Similarly, "[a]llegations of 'parallel conduct and a bare assertion of a conspiracy' are not enough for a claim to proceed." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citations omitted). Joint action need not be proved with direct evidence, but requires "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421.

First, AlBritton fails to put forth evidence that each member of the alleged conspiracy shared a conspiratorial objective. *See id*. Certainly, AlBritton details several instances of communication about him between some Defendants. *See, e.g.*, Dkt. 1 at 8 ("David Robinson, David Anderson, Jason Bateman, Dowell, and Lowe had pushed up on [Mallory] about Plaintiff's legal activities."); Dkt. 26 at 4–5 (alleging that Defendants Lowe, Mallory, Bolt, and Jones met and conspired to summon AlBritton to Dowell's office "and arranged to have [him] forcibly thrown to the ground by RNCC building officers, shackled, handcuffed, and placed in RHU"). Although some of these activities are consistent with agreement, AlBritton does not allege facts suggesting that Defendants shared an unconstitutional conspiratorial objective. Rather, these allegedly coordinated acts are consistent with RNCC processes undertaken to respond to potential fraud. To state a § 1983 conspiracy claim, the plaintiff "must make specific allegations that reasonably lead to the inferences that members of the alleged conspiracy shared

the same conspiratorial objective to try to accomplish a common and unlawful plan to violate the plaintiff's federal rights." *Snodgrass v. Messer*, No. 7:16cv00050, 2017 WL 975992, at *3 (W.D. Va. Mar. 10, 2017) (internal citations and quotations omitted). AlBritton has failed to state an underlying claim for retaliation, and does not put forth any additional unlawful conspiratorial objective as to Robinson, Bateman, Dowell, Lowe, Mallory, and Jones. AlBritton has not met the high bar to allege civil conspiracy, so his civil conspiracy retaliation claim is dismissed.

AlBritton also alleges that Lowe, Stanley-King, and Bateman conspired to deny him due process and equal protection of the law at his August 7, 2023, hearing. Dkt 26 at 5. Although AlBritton plausibly states a claim for denial of due process against Stanley-King, he makes only conclusory allegations that Stanley-King acted in concert with either Bateman or Lowe to deprive him of due process. Bateman did not attend the disciplinary hearing. Although Lowe testified at the hearing, AlBritton does not allege any facts to suggest agreement between Lowe and Stanley-King to deny AlBritton due process. Therefore, AlBritton's civil conspiracy claim against Stanley-King, Bateman, and Lowe is dismissed.

## IV. Conclusion

AlBritton alleges numerous violations of his constitutional rights by fifteen individual defendants and the Commonwealth of Virginia. Twelve individual defendants and the Commonwealth move to dismiss the Complaint and Amended Complaint for failure to state a claim. Dkts. 22–23, 42. AlBritton's complaint seeks damages, so the Commonwealth is not a proper defendant. Therefore, the motion to dismiss AlBritton's claims against the Commonwealth of Virginia is **GRANTED**. AlBritton fails to plausibly allege that adverse acts against him were taken in response to his protected activity, so the motion to dismiss his retaliation claims is **GRANTED**. As AlBritton fails to allege facts suggesting agreement to

accomplish an unlawful objective, the motion to dismiss his civil conspiracy claims is also **GRANTED**. AlBritton also fails to show that similarly situated prisoners were treated differently, so the motion to dismiss his equal protection claims is **GRANTED**. AlBritton plausibly alleges denial of due process by Defendant Stanley-King, so the motion to dismiss is **DENIED** as to that claim. However, AlBritton does not allege that Defendants Lowe or Bateman were involved in denial of due process, so the motion to dismiss his due process claims against those Defendants is **GRANTED**.

It is so **ORDERED**.

Entered: September 4, 2026

Robert S. Ballou

Robert S. Ballou
United States District Judge